UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DERRICK NORBERG

VERSUS

CENAC MARINE SERVICES, LLC

CIVIL ACTION

NO. 17-4587

SECTION M (1)

## ORDER & REASONS

Before the Court is a motion for partial summary judgment submitted by plaintiff Derrick Norberg,[1] to which the defendant Cenac Marine Services, LLC ("CMS") responds in opposition,[2] and in support of which Norberg replies.[3] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

This case arises out of injuries allegedly sustained by Norberg while employed by CMS as a Jones Act seaman aboard CMS's vessel, the *M/V Weezie*.[4] On or about August 22, 2015, Norberg was injured when he fell while operating a winch on the vessel.[5] Norberg alleges that after the injury he returned to work and continued to work with back pain until January 13, 2016, when he began feeling severe pain.[6] Norberg then sought treatment and underwent low back surgery in March 2016.[7] Norberg continued to receive treatment and underwent an interbody fusion on his

[1] R. Doc. 37.
[2] R. Doc. 38.
[3] R. Doc. 43.
[4] R. Doc. 1 at 2.
[5] *Id.*
[6] R. Docs. 1 at 2; 37-2 at 2.
[7] R. Doc. 37-2 at 2.

lower back in May 2018,[8] though according to CMS, his March 2016 surgeon opined that he had reached maximum medical improvement ("MMI") on September 16, 2016.[9] Norberg alleges that it is unclear whether he has obtained MMI as he will undergo hardware removal soon.[10]

CMS continued to pay Norberg his salary until October 2016,[11] and has paid over $200,000 in cure benefits.[12] According to Norberg, despite his counsel's making demand on CMS to pay maintenance benefits in October 2016, CMS has not done so.[13] CMS counters that it relied on the September 2016 finding of MMI to justify that it had no further maintenance obligations to Norberg.[14] It adds that Norberg failed to provide information to substantiate the amount required for maintenance after CMS sent a written discovery request on June 23, 2017, and deposed Norberg on February 22, 2018.[15] Norberg also alleges that CMS has paid all cure benefits except $3,391.00.[16] CMS claims it did not receive a request for this amount prior to the motion.[17]

Norberg seeks damages from CMS as the owner of the vessel where he was injured. Specifically, Norberg claims that CMS is liable for damages as a direct result of its negligence and its failure to provide maintenance, cure, and found benefits, pursuant to general maritime law.[18]

---

[8] *Id.* at 3.
[9] R. Doc. 38 at 4.
[10] R. Doc. 37-2 at 3.
[11] R. Docs. 37-2 at 2; 38 at 7. Norberg alleges that wages were paid until October 1, 2016, while CMS alleges they were paid until October 13, 2016.
[12] R. Docs. 38 at 5.
[13] R. Doc. 37-2 at 2-3.
[14] R. Doc. 38 at 3.
[15] *Id.* at 2-3.
[16] R. Doc. 37-2 at 3.
[17] R. Doc. 38 at 4.
[18] R. Doc. 1 at 4-5. Norberg's second cause of action seeking damages for his injury as a direct and proximate result of CMS's alleged failure to provide a safe and seaworthy vessel, pursuant to general maritime law, was dismissed by this Court with prejudice. *See* R. Doc. 19 at 1. This case was originally assigned to a different section of this Court and reassigned upon confirmation of the undersigned. *See* R. Doc. 20.

## II.    PENDING MOTION

In his motion for partial summary judgment on issues regarding maintenance and cure, Norberg seeks penalties and attorney's fees for what he argues was the arbitrary and capricious, willful, callous, and persistent denial of plaintiff's maintenance payments.[19]  Norberg argues that CMS willfully and callously refused to pay him maintenance after his counsel demanded such payment in October 2016 and renewed the demand in October 2018.[20]  He argues that CMS's denial of its obligation to pay maintenance, despite its recognition of its obligation to pay cure, amounts to "a capricious and arbitrary and willful and callous decision on [its] part."[21]  He explains that because "doubts as to a ship owner's liability for maintenance and cure are resolved in favor of the seaman"[22] and the "seaman's burden to establish the value of maintenance is 'feather light,'"[23] CMS had an obligation to pay maintenance and yet failed to fulfill it.[24]

In opposition, CMS responds that summary judgment is not appropriate because "there are conflicting diagnoses and prognoses from various physicians" and therefore a "question of fact … as to [Norberg's] entitlement to maintenance and cure benefits and as to whether [it] … was arbitrary and capricious" remains.[25]  CMS maintains that it relied on the September 2016 medical opinion that Norberg had reached MMI, which would have relieved it of any further obligation to pay maintenance.[26]  CMS also argues that an award of punitive damages in this context requires

---

[19] R. Docs. 37 at 1; 37-2 at 1-2.  In his motion for summary judgment, Norberg also seeks (1) maintenance payments allegedly due to him from October 1, 2016, through the present, in the amount of $40.00 per day; (2) outstanding cure benefits allegedly due to him in the amount of $3,391.00; and (3) the denial of any credits against maintenance for wages voluntarily paid by CMS up to October 1, 2016.  R. Docs. 37 at 1; 37-2 at 3-8; 38 at 1.  Under protest, CMS has agreed to pay Norberg the maintenance payments and outstanding cure benefits allegedly due and explains that it does not intend on seeking to offset any maintenance payments with its voluntary wage payments to Norberg.  *See* R. Doc. 38 at 2-4, 8.  These three issues are therefore moot for the purposes of this motion.
[20] R. Doc. 37-2.
[21] *Id.* at 7.
[22] R. Doc. 37-2 at 4-5.
[23] *Id.* at 5.
[24] *Id.* at 7.
[25] R. Doc. 38 at 4.
[26] *Id.* at 4-5.

"an element of bad faith," which is a question of fact for trial.[27]  It maintains that it did not act

callously or in bad faith in not paying maintenance, as it was investigating Norberg's claim by

seeking evidence of his living expenses via discovery and deposition.[28]  Furthermore, although it

has agreed to pay maintenance at the rate of $40 per day, it disputes whether Norberg has provided

sufficient evidence to support this amount and argues that the actual rate is a question of fact for

trial.[29]

In reply, Norberg responds that he made demand for maintenance on October 25, 2016,

July 30, 2018, and October 2, 2018.[30]  He notes that this last letter cited authority for a rate of

$40.00 per day as reasonable living expenses.[31]  He argues that for such reasons, an award of

punitive damages and attorney's fees is warranted.[32]

## III.    LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which the party will bear the burden of proof at trial." *Id*.  A party moving

---

[27] *Id.* at 5.
[28] *Id.* at 4-5.
[29] *Id.*
[30] R. Doc. 43 at 1-2.
[31] *Id.* at 2.  Norberg also states that, to date, the maintenance payments CMS agreed to pay have not been received and that only partial payment has been received for outstanding medical bills from October 17, 2017, to March 14, 2018, but that there is ongoing dialogue concerning the remaining balance. *Id.* at 1-2.
[32] *Id.*

for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Punitive Damages and Attorney's Fees for Failure to Pay Maintenance

#### 1. A Shipowner's Obligation to Pay Maintenance

The maritime doctrine of maintenance entitles a seaman who is injured while in the service of his ship to a daily living allowance for food and lodging. *See In re 4-K Marine, L.L.C.*, 914 F.3d 934, 937 (5th Cir. 2019); *Hall v. Noble Drilling*, 242 F.3d 582, 586 (5th Cir. 2001). Doubts as to whether a seaman has the right to maintenance payments "are to be resolved in favor of the seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962). A seaman is entitled to the reasonable cost of room and board, "provided he has incurred the expense." *Hall*, 242 F.3d at 587. An employer's obligation to pay maintenance ends when the seaman reaches MMI, meaning when his condition is cured or will not improve further. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5 (1975); *McBride v. Estis Well Service, L.L.C.*, 853 F.3d 777, 783 (5th Cir. 2017). The amount and duration of required maintenance payments are questions of fact, as they are generally particular to the injury, recovery, and location. *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518 (5th Cir. 1986). To

determine the amount of maintenance, courts permit various forms of evidence, including proof of actual expenditures, expert testimony about the cost of living in the area, and amounts negotiated via collective bargaining.  *Hall*, 242 F.3d at 587.  The seaman's burden of producing evidence of actual expenses is, however, "feather light" and his own testimony regarding his expenses is sufficient for an award.  *Yelverton v. Mobile Labs., Inc.*, 782 F.2d 555, 558 (5th Cir. 1986).  For this reason, it is common for courts to award standard rates for daily living expenses.  *Id.*  Such rates, however, do not relieve the seaman of providing an evidentiary basis to determine a maintenance amount.  *Id.*

When a shipowner receives a demand for maintenance, he is not required to immediately begin payments, but rather he may conduct a reasonable investigation of the claim and require corroboration without incurring compensatory or punitive damages.  *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723 (5th Cir. 2013); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005); *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987).  If the shipowner refuses payment and such refusal is unreasonable, he becomes liable for maintenance payments and compensatory damages.  *Morales*, 829 F.2d at 1358.  If the refusal is not only unreasonable but "callous and recalcitrant, arbitrary and capricious, or willful and persistent," the shipowner may also be liable for punitive damages and attorney's fees.  *Id.*; *see also Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009); *Vaughan v. Atkinson*, 369 U.S. at 540.  Such behavior includes "(1) laxness in investigating a claim, (2) termination of benefits in response to the seaman's retention of counsel or refusal or a settlement offer, and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically."  *Verret v. Daigle Towing Services, LLC*, 2019 WL 77237, at *2 (E.D. La. Jan. 2, 2019) (citing *Tullos v. Resource Drilling*, 750 F.2d 380, 388 (5th Cir. 1985)); *see also Holmes v. J. Ray McDermott & Co.*, 734

F.2d 1110, 1118 (5th Cir. 1984). If, however, after a diligent investigation, the shipowner determines that the claim is unsupported or illegitimate, then the failure to pay is reasonable. *McWilliams*, 781 F.2d at 518-20; *Snyder v. L & M Botruc Rental, Inc.*, 924 F.2d 728, 734 (E.D. La. 2013).

The Fifth Circuit has explained that "[n]o bright line separates the type of conduct that properly grounds an award of punitive damages … from the type of conduct that does not," and that such an award "requires an element of bad faith." *Harper v. Zapata*, 741 F.2d 87, 90 (5th Cir. 1984); *Alexander v. CHS Inc. of Minnesota*, 2018 WL 3548484, at *4 (E.D. La. July 24, 2018). Whether the refusal to pay benefits based on a medical report was done in bad faith is a question of fact for trial. *Tullos*, 750 F.2d at 388-98. Furthermore, when there are unclear and inconsistent medical diagnoses and prognoses, the question of whether the failure to pay maintenance was arbitrary and capricious is also one for trial. *Id.* at 388; *Alexander*, 2018 WL 3548484, at *4.

## 2. CMS's Failure to Pay Maintenance

Norberg has failed to meet his burden for summary judgment. He argues that CMS's failure to pay maintenance after October 1, 2016, amounted to the type of behavior worthy of punitive damages solely because CMS paid cure benefits but ignored demands for maintenance.[33] While Norberg is correct that his burden to prove expenses is "feather light," neither his October 2016 demand letter nor his July 2018 demand letter included ***any*** proof of expenses or even an amount requested.[34] Norberg only quantified an amount for his request in his October 2018 demand,[35] well after CMS sought written discovery in June 2017, and deposed him in February 2018.[36] Even then, he only provided a standard daily rate with no evidentiary basis. According

---

[33] *See* R. Doc. 37-2 at 7.
[34] *See* R. Doc. 43-1.
[35] *Id.*
[36] R. Doc. 38 at 2-3.

to CMS, Norberg has still not responded to its initial discovery request asking for this information nor during his deposition was he able to offer details of his expenses incurred to date.[37] Norberg finally listed his expenses in a November 2018 affidavit, two years after his original demand,[38] but apparently only presented it when attaching it to this motion.[39] Lacking any proof of his expenses before July 2019, CMS's failure to pay can hardly be said to be indisputably willful and callous. Furthermore, though CMS has now agreed to pay maintenance at the rate requested, it continues to dispute its underlying obligation and the amount due.[40]

Nevertheless, there is possible support for Norberg's claim that CMS's behavior was arbitrary and capricious: CMS's delay in investigating Norberg's demand for maintenance and Norberg's statement that CMS stopped payments in October 2016 after he rejected its settlement offer.[41] Even if Norberg had clearly made such allegations, though, whether this behavior was done in bad faith remains a question of fact best left to trial. *See Tullos*, 750 F.2d at 388-98. Lastly, whether CMS was justified in its reliance on the September 2016 medical report concerning MMI, making its rejection of maintenance reasonable, is also a question of fact which must be left to trial. *See id.* at 388.

Norberg has failed to show that there is no genuine issue of material fact on whether CMS's failure to pay maintenance amounted to arbitrary and capricious behavior done in bad faith. Summary judgment is therefore precluded.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

---

[37] *Id.*
[38] *See* R. Doc. 37-7.
[39] *See* R. Doc. 38 at 3.
[40] *Id.*
[41] *See* R. Doc. 37-2 at 6.

IT IS ORDERED that Derrick Norberg's motion for partial summary judgment (R. Doc. 37) is DENIED.

New Orleans, Louisiana, this 28th day of August, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE